IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | | |
|---|---|---|
| WILLIE JEROME WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 620-056 |
| | ) | |
| WARDEN BRIAN ADAMS; ALL | ) | |
| DESIGNATED PRISON OFFICIALS & | ) | |
| STAFF MEMBERS; STATE OF GEORGIA; | ) | |
| MR. BROWN, Warden of Care and Treatment; | ) | |
| MR. EPPERSON, Warden of Security; and | ) | |
| MR. McFARLANE, Warden of Security, | ) | |
| | ) | |
| Defendants.[1] | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, incarcerated at Smith State Prison ("SSP") in Glennville, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis* ("IFP"), Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I.      **SCREENING THE AMENDED COMPLAINT**

A.      **BACKGROUND**

Plaintiff names as Defendants: (1) Warden Brian Adams; (2) State of Georgia; (3) Mr.

_____

[1]The Court **DIRECTS** the **CLERK** to update the docket to be consistent with the above caption and amended complaint. (Doc. no. 17, pp. 2-3.) Defendant McFarlane is listed twice as a Defendant.

Brown; (4) Mr. Epperson; and (5) Mr. McFarlane.  (Doc. no. 17, pp. 1-2.)  Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

COVID-19 first entered the jail in the spring of 2020, and "lots of inmates" became sick. (Id. at 6.)  Defendants have not ensured the health and safety of inmates by failing to:  (1) implement social distancing policies; (2) "institute adequate health and safety measures as in PPE"; (3) implement a testing program; and (4) provide health and wellness briefings to inmates. (Id. at 5-6.)  There is no formal program for cleaning and sanitizing the housing units, and while prison officials have distributed cleaning supplies to the inmates, there has been no oversight of the distribution.  (Id.)  Despite "many cases of COVID-19," Defendants "[f]ailed to test the entire offender population."  (Id. at 5.)  On an unidentified date, Plaintiff requested to be tested for COVID-19 but was not tested, and "shortly after the entire L-Building had gotten seriously infected . . . ."  (Id. at 6.)  Plaintiff was so worried about whether he would live or die that the stress "took a negative and burdensome effect on [his] mental health and state of well-being." (Id.)

Violence has "increased tremendously" since January 2018 due to insufficient manpower within the correctional officer position at the prison.  (Id.)  Inmates compromise the security of the prison by rigging doors to escape from their cells and dorms to retrieve cell phones, drugs, and "possibly weapons."  (Id.)  The lack of security poses an imminent threat to the safety and well-being of inmates at the prison.  (Id. at 5.)  Plaintiff constantly worries about his safety.  (Id. at 6.)  "The violence has been consistently ongoing and continuous since January 1, 2018 to present time due to understaffing and Defendants turning a blind eye which results in deliberate

indifference." (Id. at 5.)

Inmates are also denied access to the law library. (Id.) The prison's rules concerning when inmates may access the law library impose a significant hardship on the inmates to pursue their "life and liberty interests." (Id.) "As with the Court system, [the prison] has strict rules involving time procedures and requirements, etc., in which inmates cannot meet if they're denied access to research, study, and prepare their cases." (Id.)

Defendants are top administrative officials who have the authority to address Plaintiff's complaints but refuse to do so. (Id.) Plaintiff has suffered psychological anguish, trauma, and post-traumatic stress disorder as a result of Defendants' actions. (Id. at 6.) For relief, Plaintiff requests compensatory and punitive damages. (Id.)

### B.   DISCUSSION

#### 1.   Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (per curiam) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face."

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 555, 557).  In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, this liberal construction does not mean that the Court has a duty to re-write the complaint.  Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2.    Plaintiff Fails to State a Claim against the State of Georgia

"The Eleventh Amendment insulates a state from suit brought by individuals in federal court, unless the state either consents to suit or waives its Eleventh Amendment immunity."  Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)).  Furthermore, the Supreme Court has

unambiguously stated that "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment . . . .  This jurisdictional bar applies regardless of the nature of the relief sought." Pennhurst State Sch. & Hosp., 465 U.S. at 100 (citations omitted); see Alabama v. Pugh, 438 U.S. 781, 781-82 (1978); Bailey v. Silberman, 226 F. App'x 922, 924 (11th Cir. 2007) ("Neither a State nor its agencies may be sued as a named defendant in federal court absent the State's consent.").  As the State has sovereign immunity against Plaintiff's § 1983 claims, this Defendant should be dismissed from the case.

### 3.    Plaintiff No Longer Brings Any Claims Against Defendant All Designated Prison Officials & Staff Members

As the Court previously explained, (doc. no. 16, p. 2), Plaintiff's amended complaint supersedes and replaces in its entirety the previous pleadings filed by Plaintiff.  See Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016).  Plaintiff originally named All Designated Prison Officials & Staff Members as a Defendant.  (See doc. no. 1.)  However, Plaintiff's amended complaint no longer names them as a Defendant, and does not make any allegations associating the unidentified staff as individuals with a purported constitutional violation.  (See generally doc. no. 17.)  Dismissal is therefore appropriate.  See Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."); West v. Atkins, 487 U.S. 42, 48 (1988) (requiring in § 1983 case allegation of violation of right secured by Constitution or laws of United States by person acting under color of state law).

### 4.     Plaintiff Fails to State a Claim for Excessive Violence

### a.     Legal Standard for Deliberate Indifference to Safety Claim

A prisoner has a constitutional right to be protected from violence and physical assault by other inmates.  Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (*per curiam*).  However, because "a risk of harm to some degree always exists by the nature of it[] being a [prison]," not every condition rises to the level of an Eighth Amendment violation.  Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga., 400 F.3d 1313, 1323 (11th Cir. 2005); see also Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981) ("This does not mean that the constitutional rights of inmates are violated every time a prisoner is injured.  It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials."); Terry v. Bailey, 376 F. App'x 894, 895 (11th Cir. 2010) (*per curiam*) ("Although 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners,' not every instance of inmate on inmate violence 'translates into constitutional liability for prison officials responsible for the victim's safety.'").  "An excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable." Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014).

"Merely negligent failure to protect an inmate from attack does not justify liability under § 1983."  Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*) (citation omitted).  Stated otherwise, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a

6

serious and imminent risk.  Farmer, 511 U.S. at 835-39; see also Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (requiring plaintiff to show "more than mere negligence," and stating courts are to look for "obduracy and wantonness, not inadvertence or error in good faith.").

In particular, a prisoner seeking to impose liability for an Eighth Amendment claim must establish the existence of "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted).  These three elements are evaluated in part by an objective standard and in part by a subjective standard.  See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014).

As the Eleventh Circuit explained,

When examining the first element—a substantial risk of serious harm—the court uses an objective standard.  The second element—the defendant's deliberate indifference to that risk—has two components:  one subjective and one objective.  To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm.  To satisfy the objective component, a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Id. (internal citations and quotations omitted).  The deliberate indifference prong of the test requires proof of "(1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk (3) by conduct that is more than mere negligence."  Dang ex rel. Dang v. Sheriff, Seminole Cty., Fla., 871 F.3d 1272, 1279 (11th Cir. 2017) (citation omitted).  In addition, "[a] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Lane, 835 F.3d at 1308 (quoting Farmer, 511 U.S. at 837)).

### b. Plaintiff Fails to Allege a Substantial Risk of Serious Harm

Applying an objective standard to the first prong of Plaintiff's deliberate indifference claim, Plaintiff has failed to allege a substantial risk of serious harm based on generalized conditions of dangerousness. "On substantial risk of serious harm, 'this objective standard embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . , but must be balanced against competing penological goals.'" Purcell ex rel. Estate of Morgan, 400 F.3d at 1321 (quoting LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993)). A prisoner has a right "to be reasonably protected from constant threat of violence". Id. (quoting Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir. 1973). However, a "prison custodian is not the guarantor of a prisoner's safety." Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir. 1990). A plaintiff may establish a substantial risk of serious harm based on the following:  (1) an individualized risk; i.e., specific threats directed toward an inmate for reasons personal to him, or (2) generalized conditions of dangerousness. Bugge v. Roberts, 430 F. App'x 753, 758 (11th Cir. 2011) (citing Farmer, 511 U.S. at 843). For the latter, an inmate plaintiff must show they are confined "in a prison where violence and terror reign . . . ." Harrison, 746 F.3d at 1299 (quoting Purcell ex rel. Estate of Morgan, 400 F.3d at 1320). On the other hand, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment." Id.

Plaintiff's allegations are too vague and conclusory to infer that violence and terror are

8

pervasive rather than commensurate of that seen in any other prison.  While he claims violence has "increased tremendously" since January 2018, Plaintiff provides no details to support this generalized assertion.  (Doc. no. 17, pp. 5-6.)  Plaintiff alleges inmates rig doors to escape from their cells and dorms to retrieve from the prison yard items that includes cell phones, drugs, and "possibly weapons."  (Id. at 6.)  This allegation is also too vague for any inference to be drawn concerning, for example, the frequency of such excursions or their impact on the rate of violence within the prison.  Plaintiff also alleges "[t]he violence has been consistently ongoing and continuous since January 1, 2018 to present time due to understaffing and Defendants turning a blind eye which results in deliberate indifference."  (Id. at 5.)  Again, however, Plaintiff provides no additional details or context for the Court to understand the facts underlying this generalized assertion.

Accordingly, while Plaintiff allegedly "constantly worries about his safety," the complaint provides no basis for a finding he is in imminent danger because conditions are sure or very likely to cause him injury.  (Id. at 6);  see Baze v. Rees, 553 U.S. 35, 50 (2008) (quoting Helling v. McKinney, 509 U.S. 25, 33, 34–35 (1993)) (stating for Eighth amendment claims, "the conditions presenting the risk must be 'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers'").  By their nature, all prisons have some degree of risk.  See Purcell ex rel. Estate of Morgan, 400 F.3d at 1323 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991) (describing inherent risk in jail setting).

### 5. Plaintiff Fails to State a Claim for Denial of Access to the Prison Library

To state a viable denial of access to the courts claim, a plaintiff must allege actual injury to existing or contemplated litigation or nonfrivolous (and therefore viable) claims challenging Plaintiff's sentence or conditions of confinement. Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998); see also Lewis v. Casey, 518 U.S. 343, 349-55 (1996). There must be evidence of deterrence of a nonfrivolous claim "such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." Wilson, 163 F.3d at 1290-91. Stated otherwise, there must be an allegation that the actions of a defendant acting under the color of state law "hindered . . . 'efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights.'" Id. at 1291 (citation omitted).

To show actual injury, a plaintiff must show he had a legitimate claim that jail officials restricted him from pursuing. Al-Amin v. Smith, 511 F.3d 1317, 1333 (11th Cir. 2008). "[T]he very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." Christopher v. Harbury, 536 U.S. 403, 414-15 (2002). Therefore, the complaint must contain allegations sufficient to give fair notice of what was allegedly lost and show "that the 'arguable' nature of the underlying claim is more than hope." Id. at 416. Accordingly, "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." Id. at 415.

10

Here, Plaintiff fails to provide facts suggesting he suffered any such actual injury. Instead, Plaintiff merely states, in conclusory fashion, denial of access to the law library imposes a significant hardship on him and other inmates in their pursuit of "life and liberty interests." (Doc. no. 17, p. 5.)  Plaintiff thus fails to state a claim.

### 6. Plaintiff Fails to State a Claim Against Defendants Epperson and McFarlane

The sole claim that survives this screening is Plaintiff's Eighth Amendment deliberate indifference claim concerning the prison's response to COVID-19, which the Court has allowed to proceed against Warden Brian Adams and Mr. Brown, Warden of Care and Treatment.  Finding no allegation or reasonable inference that supervisors of prison security have any role or responsibility in developing prison policies addressing COVID-19, the Court recommends dismissal of Defendants Epperson and McFarlane.

### 7. Official Capacity Monetary Damages

Plaintiff states he is suing the defendants in their individual and official capacities. However, the Eleventh Amendment bars official capacity claims against state prison officials for money damages.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Therefore, Plaintiff's official capacity claims against all Defendants for monetary relief fail as a matter of law.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants All Designated Prison Officials & Staff Members, State of Georgia, Warden Epperson, and Warden McFarlane, along with all official capacity claims for money damages

against all Defendants, be **DISMISSED** from this case.  By separate Order, the Court directs service of process on Warden Brian Adams and Mr. Brown, Warden of Care and Treatment based on Plaintiff's allegations concerning the prison's response to COVID-19.

SO REPORTED AND RECOMMENDED this 1st day of April, 2021, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA