IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | | |
|---|---|---|
| WILLIE JEROME WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 620-056 |
| | ) | |
| WARDEN BRIAN ADAMS and | ) | |
| VASHTI BROWN, Warden of Care and | ) | |
| Treatment, | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate incarcerated at Smith State Prison ("SSP) in Glennville, Georgia,

commenced the above-captioned case pursuant to 42 U.S.C. § 1983.  He is proceeding *pro se*

and *in forma pauperis* ("IFP").  Defendants filed a pre-answer motion to dismiss.  (Doc. no.

32).  For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS**

Defendants' motion to dismiss be **GRANTED**, Plaintiff's motion for default judgment be

**DENIED**, (doc. no. 35), and this case be **DISMISSED** and **CLOSED**.

I.      **BACKGROUND**

On June 4, 2020, the Court granted Plaintiff permission to proceed IFP, and ordered

him to amend his complaint on January 4, 2021.  (Doc. nos. 5, 16.)  On April 1, 2021, the

Court allowed to proceed an Eighth Amendment claim against Warden Adams and Warden

Brown concerning the prison's response to COVID-19.  (Doc. no. 24.)  On June 4, 2021,

Warden Adams and Warden Brown filed a motion to dismiss, arguing Plaintiff failed to properly exhaust administrative remedies prior to filing suit.  (See doc. no. 32.)  In response, Plaintiff contends he exhausted administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), and even if he did not, he was not required to exhaust such remedies because he seeks monetary damages, which is not an available remedy through the institutional grievance process.  (See doc. no. 38.)  On June 10, 2021, Plaintiff filed a motion for default judgment because "[n]o answer or other defense has been filed by the Defendants."  (Doc. no. 35.)

In their motion to dismiss, Defendants produced the declaration of Sharon Osborn, the Grievance Coordinator at SSP.   (See Osborn Decl., doc. no. 32-2.)   The Grievance Coordinator's responsibilities include ensuring compliance with the Grievance Standard Operating Procedure ("SOP"), coordinating timely investigations and responses to inmate grievances, and maintaining information and records regarding inmate grievances.  (Id. ¶ 2.) The Grievance Coordinator identified one grievance, Grievance 310590, submitted by Plaintiff on June 22, 2020.  (Id. ¶ 11.)  That grievance alleged understaffing, denial of COVID-19 testing and personal protective equipment, and difficulty accessing the law library.  (Id. ¶ 12.)  On August 4, 2020, the Warden rejected the grievance because it addressed more than one issue in a single grievance, a violation of Step 1 of the Grievance SOP.  (Id. ¶¶ 7, 12.)  On August 5, 2020, Plaintiff acknowledged the Warden's response.  (Id. ¶ 12.)  Plaintiff filed an appeal; however, on September 3, 2020, the Central Office denied the appeal because the grievance contained more than one issue and the appeal was filed

outside of the ten-day time limit. (Id.) On September 9, 2020, Plaintiff acknowledged

receipt of the denial. (Id.)

## II.   DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF FAILED TO PROPERLY EXHAUST HIS ADMINISTRATIVE REMEDIES PRIOR TO FILING THIS LAWSUIT

### A.   The Legal Framework

Where, as here, a defendant has filed a motion to dismiss a claim based on failure to

exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts

to use in resolving such motions. First, the court looks to the factual allegations made by both

parties, taking the plaintiff's version as true where they conflict, and if in that light the

complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's

motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing

Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)). If the complaint

is not subject to dismissal at the first step, then at step two the court makes specific findings to

resolve the disputed factual issues, with the defendant bearing the burden of proving Plaintiff

has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed

factual issues, the court determines whether the prisoner has exhausted his available

administrative remedies and thus whether the motion to dismiss should be granted. Id.

Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits,

it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so

long as the factual disputes do not decide the merits and the parties have sufficient opportunity

to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In the Eleventh Circuit, "brought" as used in this section of the PLRA means "the filing or commencement of a lawsuit, not . . . its continuation."  Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000) (*en banc*); see also Goebert v. Lee Cty., 510 F.3d 1312, 1324 (11th Cir. 2007) ("The time the statute sets for determining whether exhausting of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied.").  Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case."  McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002).  Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate.  See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)).  Under the PLRA, the Court has no discretion to inquire into whether

administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

### B.      The Administrative Grievance Procedure

According to the Guidance Coordinator, the administrative grievance procedure applicable in this case is the version of the Georgia Department of Correction's SOP IIB05-0001, which became effective on May 10, 2019.  (Osborn Decl., ¶ 3 & Ex. 1 (doc. no. 32-3).)

The grievance procedure has two steps:  (1) Original Grievance, and (2) Central Office Appeal.  PN 227.02 § IV(C).  The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor. Id. § IV(C)(1)(c) & (d).  The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b).  The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id.  The grievance coordinator screens the grievance to determine whether to

accept it for processing or recommend the Warden reject it.  Id. § IV(C)(1)(e)(i).  The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident.  Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted.  Id. § IV(C)(1)(f)(v).  If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal.  Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2).  The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause.  Id. § IV(C)(2)(b).  The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal.  Id. § (C)(2)(e).  If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance.  Id. § (C)(2)(g).  The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal.  Id.

### C.     Plaintiff's Failure to Exhaust

Taking Plaintiff's factual allegations as true according to the first step under Turner, Plaintiff's claims are not subject to dismissal because Plaintiff alleges in his amended complaint to have completed the grievance procedure concerning his claims.  (Doc. no. 17,

pp. 7-8.)   Therefore, in accordance with the first step of the <u>Turner</u> analysis, the instant complaint is not subject to dismissal, and the Court must proceed to step two of the analysis and make specific findings to resolve the factual dispute.  <u>Turner</u>, 541 F.3d 1082-83.

Under step two of <u>Turner</u>, Plaintiff's claims are subject to dismissal because Plaintiff did not file any grievances concerning his claims prior to filing suit.  Plaintiff signed his initial complaint on May 22, 2020, and it was filed in the Southern District of Georgia on June 1, 2020.  (Doc. no. 1, p. 12.)  Plaintiff's grievance history establishes he filed one grievance related to his claims concerning the prison's response to COVID, Grievance Number 310590.  (Osborn Decl., ¶ 11.)  There is no dispute this is the only grievance Plaintiff filed concerning his claims against Defendants.  Plaintiff signed his grievance on June 22, 2020, one month after he signed the complaint in this civil action.  (Ex. 3, doc. no. 32-5, p. 4.)

That Plaintiff received the final rejection of his grievance and appeal prior to filing his amended complaint on January 12, 2021 does not change the outcome.  "The time the statute sets for determining whether exhausting of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied."  <u>Goebert</u>, 510 F.3d at 1324.  Plaintiff "brought" this legal action when he signed his original complaint on May 22, 2020.  <u>Harris</u>, 216 F.3d at 974.  Amending a complaint cannot cure the exhaustion defect because such actions do "not change the important historical fact: [Plaintiff's] administrative remedies were unexhausted when he filed his original complaint."  <u>Smith</u>, 491 F. App'x at 83.

Plaintiff contends the exhaustion requirement does not apply to him because he seeks monetary damages in this lawsuit, and the grievance process could not have awarded him monetary damages. (Doc. no. 38, p. 2.) However, the PLRA requires exhaustion in all cases concerning prison conditions, including cases where an inmate seeks monetary relief. See Allen v. Blakely, 814 F. App'x 522, 525 (11th Cir. 2020) ("Exhaustion is a prerequisite to suit [e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages.") (internal quotation omitted). Plaintiff also contends the exhaustion requirement does not apply because he asserts claims under Bivens rather than § 1983. (Doc. no. 38, p. 2.) This argument fails because Plaintiff is a state inmate suing state officials under § 1983, and the exhaustion requirement applies to Bivens claims. See Porter v. Nussle, 534 U.S. 516, 524 (2002) ("[F]ederal prisoners suing under [Bivens] must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit.").

Even if Plaintiff had filed the grievance in advance of the complaint, he failed to exhaust his remedies. The warden rejected Plaintiff's grievance because it raised at least three issues, in violation of the single issue/incident requirement. (Ex. 3, p. 3.) The Central Office denied Plaintiff's appeal of the grievance rejection because the grievance contained more than one issue and the appeal was filed outside of the ten-day time limit. (Id. at 1.) The exhaustion requirement is not satisfied if a prisoner falls short of compliance with grievance procedural rules. Johnson, 418 F.3d at 1159.

Because Plaintiff failed to exhaust his administrative remedies prior to initiating this lawsuit against Defendants, the motion to dismiss should be granted. Leal v. Ga. Dep't of

Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.

III.   **PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT SHOULD BE DENIED**

Plaintiff moves for entry of default against Defendants alleging they failed to timely respond to Plaintiff's amended complaint after being served with a summons and amended complaint by the Marshals Service.  (Doc. no. 35.)  Under Fed. R. Civ. P. 55(a), a party is entitled to entry of default when it has shown an adverse party has failed to plead or otherwise defend against a complaint through affidavit or otherwise.  On April 5, 2021, the United States Marshal requested Defendants waive formal service of summons, and, on May 2, 2021, defense counsel for Defendants executed the waiver of service.  (Doc. nos. 29-31.)  As the Court explained in its April 1, 2021 Order, a defendant who waives formal service of summons does not have to answer the complaint until sixty days after the date the Marshal mails the request for waiver.  (Doc. no. 24, p. 4 (citing Fed. R. Civ. P. 4(d)(3)).)  Thus, entry of default is not warranted because Defendants timely responded to Plaintiff's amended complaint with the filing of their motion to dismiss on June 4, 2021.  Accordingly, Plaintiff's Motion for Entry of Default Judgment should be denied.  (Doc. no. 35.)

IV.   **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED**, (doc. no. 32), Plaintiff's motion for default

judgment be **DENIED**, (doc. no. 35), and this case be **DISMISSED** and **CLOSED**.

SO REPORTED and RECOMMENDED this 21st day of July, 2021, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA